JOHN J. CLARK, ET AL., Appellees, v. W. H. LAKE, County Auditor, et al., Appellants.

Elections: CANVASS OF RETURNS: ABSTRACT OF VOTE: PUBLICATION. The statutes relating to the canvas and abstract of election returns by the board of supervisors, and providing for a publication of the returns, require the board to make an 'abstract of the election returns as canvassed and received from the various precincts, and that the auditor shall furnish for publication a schedule showing the vote by precinct of each person voted for at the election.

*Appeal from Taylor District Court.*—HON. H. M. TOWNER, Judge.

THURSDAY, FEBRUARY 17, 1910.

THE facts are stated in the opinion.—*Affirmed.*

*T. M. Dougherty* and *G. B. Haddock,* for appellants.

*Flick & Flick,* for appellees.

EVANS, J.—This is a *mandamus* proceeding, brought by the plaintiffs, as owners of the official newspapers of Taylor County, against the defendant Lake, as county auditor, asking that he be commanded to furnish to them for publication certain' alleged proceedings of the board of supervisors. The controversy arises over the proper construction of section 1149 of the Code, relating to the canvass of the election returns by the board of supervisors.

Section 1149 is as follows: "At their meeting on the Monday after the general election at twelve o'clock, noon, the board of supervisors shall open and canvass the

returns and make abstracts, stating in words written at
length, the number of ballots cast in the county for each
office, the name of each person voted for and the number
of votes given to each person for each different office."
For convenience of reference in the discussion, we will
bracket a portion thereof as follows: "At their meeting
on the Monday after the general election at twelve o'clock,
noon, the board of supervisors shall open and canvass
the returns and make abstracts [stating in words written
at length, the number of ballots cast in the county for
each officer, the name of each person voted for and the
number of votes given to each person for each different
office]." Section 441 provides that "all the proceedings of
the county board of supervisors . . . shall be pub-
lished at the expense of the county during the ensuing
year" in the official newspapers, and that the "county
auditor shall furnish all such papers selected a copy of
such proceedings for that purpose."

It is the contention of the auditor in this case that
the canvass of returns and the making of abstracts re-
ferred to in section 1149 consists in ascertaining the total
number of ballots cast in the county for each office, the
name of each person voted for, and the number of votes
given to each person for each different office, and in set-
ting forth such result "in words written at length." On
the other hand, the plaintiffs contend that the statute con-
templates that abstracts shall be made of the precinct re-
turns of the election as ascertained from the poll books
by the canvass, and that such abstracts of the precinct re-
turns should be furnished for publication as a part of the
proceedings of the board of supervisors. The defendant
did furnish to the plaintiff in written words the number
of ballots cast in the county for each office, the name of
each person voted for, and the number of votes given to
each person for each different office, in precise accord with
that part of section 1149 which we have inclosed in

brackets. The following is a part of the proceedings so furnished for publication and is sufficient to illustrate its general form and character: "Abstract of votes cast at the general election held in Taylor County, Iowa, on the third day of November: For the office of elector at large there were four thousand one hundred eighty-six votes cast, of which Thomas T. Anderson received twenty-four hundred sixty votes; John E. Craig received fifteen hundred eighty-five votes; T. S. Coffin received ninety-four votes; N. P. Alifas received forty-six votes."

The plaintiffs contend that this is not a compliance with the whole statute. The following is illustrative of the form of abstracts contended for by the plaintiffs as being within the contemplation of the statute:

| Names of Townships or Voting Precincts. | Office of Co. Recorder. | Office of Co. Treasurer. | | Office of Cl'rk of D.C. | | Office of Co. Sheriff. | | Office of Co. Attorney. | | Office of Co. Supt. | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | A. F. Perry, Rep. | O. R. Cain, Rep. | E. F. Miner, Rep. | J. R. Cummings, Rep. | H. M. Creswell, Dem. | And. Downing, Rep. | W. Larson, Dem. | B. J. Gibson, Rep. | J. W. Hutchison, Dem. | Clara Taylor, Rep. | C. V. Frazier, Dem. |
| Grant | 94 | 53 | 104 | 60 | 87 | 85 | 63 | 94 | 53 | 96 | 48 |
| Union | 88 | 55 | 91 | 77 | 65 | 72 | 72 | 79 | 65 | 79 | 63 |
| Colony | 76 | 84 | 75 | 64 | 99 | 49 | 116 | 77 | 88 | 72 | 94 |
| Mercer | 48 | 87 | 50 | 36 | 96 | 76 | 63 | 49 | 86 | 57 | 83 |
| Prescott | 178 | 113 | 176 | 155 | 133 | 131 | 161 | 153 | 136 | 140 | 150 |
| Carl | 105 | 72 | 119 | 101 | 73 | 88 | 92 | 99 | 81 | 108 | 68 |
| Jasper | 40 | 81 | 74 | 61 | 39 | 58 | 66 | 44 | 81 | 65 | 56 |
| Jasper No. 3 | 25 | 21 | 32 | 26 | 18 | 25 | 22 | 24 | 23 | 29 | 18 |
| Brooks | 46 | 48 | 67 | 60 | 35 | 42 | 54 | 63 | 34 | 52 | 47 |
| Quincy | 43 | 45 | 58 | 51 | 37 | 37 | 55 | 50 | 40 | 52 | 39 |
| Corning, 1 ward | 51 | 98 | 113 | 99 | 47 | 80 | 72 | 60 | 90 | 89 | 53 |
| Corning, 2 ward | 112 | 136 | 177 | 172 | 79 | 150 | 107 | 136 | 119 | 145 | 110 |
| Corning, 3 ward | 47 | 71 | 72 | 71 | 44 | 72 | 56 | 210 | 71 | 61 | 170 |
| Washington | 100 | 125 | 143 | 111 | 108 | 88 | 143 | 139 | 96 | 120 | 101 |
| Nodaway | 161 | 115 | 180 | 184 | 92 | 129 | 160 | 109 | 76 | 122 | 57 |
| Douglas | 130 | 110 | 154 | 142 | 101 | 116 | 130 | 57 | 100 | 138 | 109 |
| Lincoln | 99 | 80 | 136 | 124 | 56 | 97 | 87 | 136 | 76 | 125 | 56 |
| Totals | 1443 | 1394 | 1821 | 1594 | 1231 | 1395 | 1519 | 1579 | 1315 | 1550 | 1318 |

The question of construction presented by the dispute is, shall the bracketed portion of the section be deemed as additional to the first portion thereof, or shall it be deemed

as a limitation thereon and as a mere definition of the term "abstracts?" The word "abstract" implies an antecedent subject, and, if we can ascertain such subject with certainty, it necessarily furnishes the key to the construction. "At their meeting on the Monday after the general election at twelve o'clock, noon, the board of supervisors shall open and canvass the returns and make abstracts." "Abstracts" of what? Manifestly, "abstracts" of the "returns" as canvassed. "The board of supervisors shall open and canvass the returns." What "returns?" Necessarily, the various precinct returns. It seems clear to us, therefore, that the statute enjoins upon the board the duty (1) of canvassing the precinct returns, and (2) of making abstracts thereof as the only practicable method of making their canvass appear of record. We think, also, that the bracketed words enjoin the additional duty of setting forth the sum total as to each person and office "in words written," and that they are not intended to place a restricted meaning or definition upon the term "abstracts." The statute under consideration is not a model of English composition. It is capable in a rhetorical sense of the construction contended for by the defendant. We think, however, that the other construction (which was adopted by the trial court) is the more reasonable one, and that it is in accord with the real intent of the Legislature. If we may take judicial notice of matters of common observation, we think it must be said that such is the construction which has been commonly put upon it for many years. One of the purposes of the publication of the official proceedings of the board is that it tends to operate as a check against mistakes and against wrongdoing. Such purpose could be little subserved by the mere publication of the total vote of a county, concerning which no person could have independent knowledge, except by independent canvass of the vote. On the other hand, the precinct results are known in each precinct, and, if a

mistake should be made therein by the board of supervisors, such mistake would be likely to be discovered by its publication.

It is said in appellant's argument that the law does not contemplate any record of the precinct results upon which the official footings are based. This is a logical assumption, if the construction contended for by appellant is adopted. To our minds, it only furnishes a stronger reason why the contrary construction should be adopted. The construction which we here adopt not only requires the board to open and canvass the precinct returns, but to make abstracts of such precinct returns as a part of their proceedings. It necessarily follows that they should be preserved as such in some form by the auditor, and that publication should be made. It is said in appellant's argument that the publishers have a custom of charging a threefold price for tabulated work, and this was one reason why the defendant did not feel warranted in furnishing this tabulated matter. It is sufficient to say that the statute fixes the rate of charges which can lawfully be made by the plaintiffs, and no custom of publishers will justify a departure from the rate fixed by the statute, whatever that rate may be. We may say also that nothing is disclosed in this record which tends to show any improper motive or bad faith on the part of the defendant in raising the question here presented for our consideration.

The conclusions of the trial court were in accord with the views here expressed, and its order is *affirmed*.